**UNITED STATES DISTRICT COURT**
**IN AND FOR THE WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

Theresa Roeder, as the Administratrix of the
Estate of Esther Kay Roeder, deceased, and on
behalf of the wrongful death beneficiaries of
Esther Kay Roeder; Tara Roeder, as the
Administratrix of the Estate of Bruce Wayne
Roeder, and on behalf of the wrongful death
beneficiaries of Bruce Wayne Roeder; and Tara
Roeder, Administratrix of the Estate of Deborah
Busby Roeder, and on behalf of the wrongful
death beneficiaries of Deborah Busby Roeder,

          Plaintiffs,

v.

United States of America,

          Defendant.

_____/

U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

AUG 0 4 2011

CHRIS R. JOHNSON, Clerk
By
      Deputy Clerk

CASE NO.: *11-6062*

## COMPLAINT

Come now the Plaintiffs, Theresa Roeder, as the Administratrix of the Estate of Esther

Kay Roeder ("Kay Roeder"), deceased and on behalf of the wrongful death beneficiaries of Kay

Roeder; Tara Roeder, as the Administratrix of the Estate of Bruce Wayne Roeder ("Bruce

Roeder"), deceased, and on behalf of the wrongful death beneficiaries of Bruce Roeder; and Tara

Roeder, Administratrix of the Estate of Deborah Busby Roeder ("Deborah Roeder"), deceased,

and on behalf of the wrongful death beneficiaries of Deborah Roeder (hereinafter the

"Plaintiffs"), by and through their undersigned attorneys, Wilkes & McHugh, P.A., and for their

cause of action against Defendant, United States of America ("United States"), state:

### INTRODUCTION

1.     This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§

1346(b)(1), 2671 et seq., Arkansas Survival of Actions Statute, Ark. Code Ann. § 16-62-101, and

the Arkansas Wrongful Death Act, Ark. Code Ann. § 16-62-102, for personal injury and wrongful death caused by the negligence of the United States Forest Service.

## JURISDICTION

2.      The action alleged herein against the Defendant, United States of America, arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671 et. seq., and therefore this Court has original jurisdiction under 28 U.S.C. § 1331.

3.      Venue is proper in the Western District of Arkansas under 28 U.S.C. § 1402 because this is a civil action involving a tort claim against the United States and the acts and omissions complained of occurred in this judicial district.

4.      All procedural prerequisites to filing this action have been satisfied, met, or otherwise waived, including the exhaustion of all administrative remedies under the FTCA. On or about October 26, 2010, Plaintiffs submitted their claims for damage, injury and death to the United States Forest Service and as of the date of filing, Plaintiffs have not received any response disposing of this claim.   Accordingly, pursuant to 28 U.S.C. § 2675(a) since no response has been received as of the date of this Complaint the claims have been denied.

## PARTIES

5.      Theresa Roeder is a resident and citizen of the State of Louisiana. She is the daughter of the decedent Kay Roeder, who died as a result of the negligence that gives rise to this action. *See* Death Certificate attached hereto as Exhibit "**A**".  She was duly appointed as the Administratrix of the Estate of Kay Roeder on January 11, 2011, as evidenced by the Letters of Succession attached hereto as Exhibit "**B**".

6.      At all times material hereto, Kay Roeder was lawfully married to and resided with Noel "Tom" Roeder. Kay Roeder died on June 11, 2010 at 69 years of age. She died with three

children, Theresa Roeder, Cindy Kinler Tuma, and Keith Roeder, and two siblings, Edwin Park and Connie Gardner.

7.      At all times material hereto, Tara Roeder was a citizen of the State of Louisiana. She is the daughter of decedents, Deborah Roeder and Bruce Roeder, both of whom who died as a result of the negligence that gives rise to this action. See Death Certificates attached hereto as Exhibit "**C**" and "**D**". She was duly appointed as the Administratrix of the Estates of both Deborah Roeder and Bruce Roeder on July 11, 2011, as evidenced by the Letters of Independent Administration attached hereto as Exhibit "**E**".

8.      At all times material hereto, Bruce Roeder and Deborah Roeder were lawfully married and resided together.

9.      Bruce Roeder died on June 11, 2010 at 51 years of age.  Bruce Roeder died with two children, Tara Roeder and Brian Roeder, a half-sister, Cindy Kinler Tuma, a half-brother, Shane Carpenter, and two parents, Noel "Tom" Roeder, and Darlene Wright Roeder Carpenter.

10.     Deborah Roeder died on June 11, 2010 at 52 years of age.  Deborah Busby Roeder died with two children, Tara Roeder and Brian Roeder, two brothers, Daryl Busby and Henry Busby, and two parents, Minor Busby and Ruth Busby.

11.     The United States is a sovereign government that has consented to be sued for civil liability in accordance with the FTCA, 28 U.S.C. § 2671, et seq.

12.     Plaintiffs are informed and believe that at all times material hereto that the United States Forest Service was an agency of the defendant, United States, under the direct jurisdiction of the United States Department of Agriculture.

## BACKGROUND FACTS

13.     On or about June 9, 2010, the Roeder Family gathered at Albert Pike Recreation Area (hereinafter "Albert Pike") Campgrounds for their annual summer vacation, as they had for many years. While some of the family members set up in tents, Kay Roeder, Bruce Roeder, his wife Deborah Roeder, and their daughter Tara Roeder, took their recreational vehicle to Loop D, where there was access to electricity.

14.     A powerful storm system made its way through Arkansas throughout the day of June 10, 2010, producing two rounds of storms in the morning and afternoon. In the early hours of June 11, 2010, the storm made its way to the Albert Pike Campgrounds.

15.     Despite the history of flash flooding in the area, the employees and agents of the Forest Service made no attempt to warn the campers of the dangerous, "flashy" nature of the Little Missouri river that bordered the camp sites. Likewise, no signs were in place to warn the campers of the flooding-potential of the area.

16.     Just before dawn on June 11, 2010, while campers were sound asleep, the Little Missouri River overran its banks into the Albert Pike Campgrounds.

17.     Inside the Roeder RV, Tara Roeder awoke around 3 a.m. because the camper was rocking. She roused her parents and grandmother, and when they looked outside, water was just about to come in the door of the camper. Within seconds, something – possibly a vehicle – slammed into the side of the camper. It started floating and rolling over. The family tried to walk up the side of the camper to right it, but it was no use. There was another powerful impact, and the camper imploded. All four Roeders – Kay Roeder, Bruce Roeder, Debbie Roeder, and Tara Roeder, 30, were pulled into the roiling water and pouring rain during the pitch black of early morning.

4

18.     Tara Roeder never saw or heard from the other three once the camper disintegrated. She was buffeted in the rapidly moving water, and tried to reach out and grab trees. She finally was able to cling to a tree small enough that she could wrap her arms and legs around as the water rushed her from behind. For more than two hours, she held on for her life. Around 6 a.m., she was able to climb down and wade to a spot of ground where she waited with others to be rescued.

19.     The flood swept away the campground register, so it was not known exactly how many people were in the park at the time, though estimates put the number between 200-300. In the days after the flood, airplanes and helicopters, including a Black Hawk dispatched by the Arkansas Air National Guard, made low passes through the mountain valleys in search of victims. Hundreds of volunteer searchers, including 12 K-9 units, members of the Arkansas Canoe Club, and divers from the Murfreesboro Dive Team, combed 50 miles of river and tributaries looking for victims. About 60 campers were rescued. Twenty people were killed, including Kay Roeder, Deborah Roeder and Bruce Roeder.

### COUNT I - WRONGFUL DEATH OF KAY ROEDER AS AGAINST THE UNITED STATES OF AMERICA

20.     Plaintiffs reiterate and incorporate fully herein the allegations contained in paragraphs 1 through 19.

21.     At all relevant times, Defendant, the United States, and the employees and agents of the United States Forest Service undertook and therefore owed a duty to Kay Roeder, in light of all relevant circumstances, to exercise reasonable care, including the duty to monitor and ensure the safety of the visitors of Albert Pike.

22.     Defendant, the United States, breached its duties owed to Kay Roeder by:

a. negligently failing to post signs or otherwise warn campers of the dangers of flash floods in the area as a result of conditions that the Forest Service knew or should have known existed at Albert Pike in June 2009, in violation of Forest Service internal directives relating to flood signing, USDA, 10;

 i. A well known record of significant flooding events existed prior to the tragedy on June 11, 2010. As recognized by the USDA, flooding incident four days after Albert Pike Loop D officially opened on 07/03/04 in conjunction with subsequent flooding events "should have alerted the Forest Service to the existence of potential flood hazards at Albert Pike Campground D and should have prompted the Forest Service to undertake mitigation measures, such as posting of warning signs." USDA, 17.

 ii. FSM 2527.5 *Posting of Past and Probable Flood Heights*, requires the posting of flood hazard signs to enhance public awareness of flood hazards by placing appropriate signs and notices showing the highest flood level and probable 100-year flood height;

 iii. Forest Service EM-7100-15, section 13.2 also provides for flood hazard warning and notices, as well as a requirement that the Forest Service will post supplementary information and posters or bulletins as needed for visitor information; however, due to negligence, such signs or warning posters were not posted at Albert Pike prior to the June 11, 2010 flood event;

6

       iv.  The Forest Service themselves acknowledged that "[t]he Ouachita National Forest failed to post hazard waning signs and notices at the Albert Pike Campground even though there was an established record of flooding at Albert Pike and Forest Service guidelines called for the posting of such signs," FS, 15;

       v.  Among other failures, Region 8 Flood Sign Coordinator was negligent and failed to coordinate with Albert Pike Campgrounds to share information on flood signs with Regional Sign Coordinators;

b. negligently failing to develop a contingency plan or other mitigation steps to deal with a major flooding event at Albert Pike Campground, as acknowledged by the Forest Service, FS, 15;

c. negligently failing to take action to reduce the risk of flooding, as mandated by Executive Order 11988;

d. negligently failing to educate Forest Service employees on Forest Service directives and policies related to flood hazards and negligently failing to implement the directives on critical issues, such as signage and public safety;

       i.  As pointed out by the USDA and acknowledged by the Forest Service, "Ouachita Forest Service employees in Region 8 and on the Ouachita National Forest do not have adequate knowledge of Forest Service directives and policies related to flood hazards and mitigation requirements." FS, 15.

7

e.  negligently failing to implement an adequate warning system to notify campers at Albert Pike Campgrounds of dangerous weather conditions and flooding risks;

f.  negligently failing to adequately warn the public of the dangers of the impending storm of June 10-11, 2010 to campers at Albert Pike;

   i.  despite implementing a severe weather policy on the Ouachita Forest and the Caddo-Womble district applicable to Forest Service Employees, the Forest Service failed to implement a similar policy for the safety of the public, USDA, 26;

g.  negligently failing to give Albert Pike Camp Hosts and campers prior notice of dangerous weather conditions that were predicted to affect the Albert Pike campground, including the flash-flood watch that was issued at 11:59 am on June 10, 2010 and was set to remain in effect until 7:00 pm on June 11, 2010;

h.  negligently failing to advise Volunteer Camp Hosts that Albert Pike campground was located in a flood plain and negligently failing to train Camp Hosts for a flood contingency plan,

   i.  In violation of the following Forest Manual directives: FSM 2331.1 *Volunteer Hosts*: Special training and orientation for volunteer hosts is encouraged; FSM 1834.2 *Orientation, Training & Safety*: ...Provide each volunteer orientation on Forest Service history, programs, objectives, environmental quality, and public safety, as appropriate. ... Ensure volunteers receive the necessary training appropriate to

enhance their services. Each volunteer shall receive training in safe practices before and during assigned tasks.

i.   negligently failing to train or prepare Volunteer Camp Hosts at Albert Pike Campgrounds for emergency situations, including a flash flood, as acknowledged by the Forest Service, FS, 15;

      i.   In violation of the following Forest Manual directives: FSM 2331.1 *Volunteer Hosts*: Special training and orientation for volunteer hosts is encouraged; FSM 1834.2 *Orientation, Training & Safety*: ...Provide each volunteer orientation on Forest Service history, programs, objectives, environmental quality, and public safety, as appropriate. ... Ensure volunteers receive the necessary training appropriate to enhance their services. Each volunteer shall receive training in safe practices before and during assigned tasks.

j.   negligently failing to maintain the Albert Pike campgrounds in a reasonably safe condition for public use and failing to protect the health and safety of forest visitors, as required by the Land and Management Plan in effect in June of 2010;

k.   negligently failing to monitor and ensure the safety of campers at Albert Pike, as required by Section 21.04 of the Forest Service Health and Safety Code Handbook: "it is the responsibility of the officers and supervisors...to ensure the safety of both employees and the public."

l.   negligently failing to evacuate the campers at Albert Pike in a timely fashion;

m.  negligently failing to repair a broken radio repeater that resulted in an inability to communicate via radio and the loss of 24-hour dispatch services;

n.  negligently failing to correct reported broadcast transmission problems from the Albert Pike Recreation Area with two-way Forest Service radio, including malfunction with High Peak repeater that had been malfunctioning for approximately six (6) months prior to June 11, USDA, 23;

o.  negligently failing to provide a NOAA National Weather Service ("NWS") weather radio to the Camp Host to ensure that campers would be alerted of dangerous weather conditions in the area;

p.  negligently failing to address communication issues with Forest Service employees and law enforcement personnel and failing to implement alternate means of communications to ensure the safety of all employees and campers, as a result of the site's topography, malfunctioning of radio tower repeaters, and known lack of cellular reception;

q.  negligently failing to ensure timely emergency response capability for all emergencies, including weather-related emergencies, rather than solely focusing on fire emergencies;

r.  negligently failing to implement 24-hour Forest Service dispatch services for emergency situations at Albert Pike to ensure the safety of all employees and campers, USDA.18;

s.  negligently failing to safely and reasonably construct the nearby sewer system, including failure to clean and maintain sewage drains or basins;

10

23.     District Ranger Watson and other Forest Service employees were negligent and failed to exercise reasonable care in their actions of proposing, approving, and building the campground in Loop D at Albert Pike in 2001, including but not limited to the following instances:

   a.  using improper methods to determine the 100 year flood plain elevation;

   b.  negligently failing to build the Loop D campground in an alternate location outside the 100 year flood plain, as required by the Land and Resource Management Plan in effect in June of 2010;

   c.  negligently failing to recognize the dangers of constructing Loop D of Albert Pike in a flood plain;

   d.  negligently failing to include the posting of flood hazard signs and increased elevations in the contract for construction of Loop D of Albert Pike due to flooding risks,

        i.  as admitted by Forest Service personnel, Flemming: "the contract would have been a perfect avenue to include the issue from the NEPA process about signing the area with warning signs about flooding. Flemming did not know why that (signing issue) didn't get entered into the contract." USDA, 16;

   e.  fraudulently misleading the engineers and architects hired to build the Loop D campgrounds of Albert Pike;

   f.  negligently failing to notify engineers and architects responsible for constructing the Loop D of flood hazards in the campgrounds and of the existence of the flood plain;

11

g.  intentionally and negligently disregarding specialists' recommendations to limit camping on Loop D to primitive camping and not installing electricity, water and sewage hook ups;

h.  negligently failing to follow the mandates of the National Environmental Protection Act ("NEPA") and Forest Service guidelines by unilaterally deciding that the campground construction site was above the 100 year flood plain mark based on his own visual assessment,

    i.  as determined by the USDA, Ranger Watson's assertion in the Environmental Assessment that "'none of the new campsites proposed for Loop D are in the flood plain' is simply not supported by any credible evidence in the project file;"

i.  negligently failing to comply with Forest Service directives on building in a flood plain, the appropriate signage for flood hazard warnings, and other mitigating factors required for construction in a flood plain;

j.  negligently failing to consider the well-documented history of flooding of the Albert Pike Campground area;

k.  negligently failing to recognize that National Resource Conservation Service maps clearly show that the entire Albert Pike river corridor is located in a flood plain based on the frequency of flooding, USDA, 15;

l.  negligently failing to comply with NEPA mandates, by failing to complete an Environmental Impact Statement ("EIS"), as the proposed construction of Loop D of Albert Pike was clearly a major Federal action that significantly affected the quality of the human environment;

12

      m. negligently failing to adequately supervise construction of the Loop D campgrounds at Albert Pike ;

      n. negligently failing to maintain the Albert Pike Campgrounds and surrounding flood plain in a safe manner.

24.     As a direct and proximate result of the negligence described hereinabove, the employees and agents of the United States Forest Service caused or were a substantial factor in causing the death of Kay Roeder.

25.     The Plaintiffs assert claims for all compensatory, including, but not limited to, the physical injuries and deaths described herein, pain and suffering, mental anguish, loss of life, loss of consortium, loss of services and contributions, medical expenses, caretaking and custodial care and property damage, including any such damages reasonably certain to be incurred in the future, in an amount to be determined by the fact-finder, plus the costs of this litigation, and all of the relief to which the Plaintiffs are entitled to by law.

## COUNT II - WRONGFUL DEATH OF BRUCE ROEDER AS AGAINST THE UNITED STATES OF AMERICA

26.     Plaintiffs reiterate and incorporate fully herein the allegations contained in paragraphs 1 through 19.

27.     At all relevant times, Defendant, the United States, and the employees and agents of the United States Forest Service undertook and therefore owed a duty to Bruce Roeder, in light of all relevant circumstances, to exercise reasonable care, including the duty to monitor and ensure the safety of the visitors of Albert Pike.

28.     Defendant, the United States, breached its duties owed to Bruce Roeder by:

      a. negligently failing to post signs or otherwise warn campers of the dangers of flash floods in the area as a result of conditions that the Forest Service knew

or should have known existed at Albert Pike in June 2009, in violation of Forest Service internal directives relating to flood signing, USDA, 10;

    i. A well known record of significant flooding events existed prior to the tragedy on June 11, 2010. As recognized by the USDA, flooding incident four days after Albert Pike Loop D officially opened on 07/03/04 in conjunction with subsequent flooding events "should have alerted the Forest Service to the existence of potential flood hazards at Albert Pike Campground D and should have prompted the Forest Service to undertake mitigation measures, such as posting of warning signs." USDA, 17.

    ii. FSM 2527.5 *Posting of Past and Probable Flood Heights*, requires the posting of flood hazard signs to enhance public awareness of flood hazards by placing appropriate signs and notices showing the highest flood level and probable 100-year flood height;

    iii. Forest Service EM-7100-15, section 13.2 also provides for flood hazard warning and notices, as well as a requirement that the Forest Service will post supplementary information and posters or bulletins as needed for visitor information; however, due to negligence, such signs or warning posters were not posted at Albert Pike prior to the June 11, 2010 flood event;

    iv. The Forest Service themselves acknowledged that "[t]he Ouachita National Forest failed to post hazard waning signs and notices at the Albert Pike Campground even though there was an established record

14

of flooding at Albert Pike and Forest Service guidelines called for the posting of such signs," FS, 15;

  v. Among other failures, Region 8 Flood Sign Coordinator was negligent and failed to coordinate with Albert Pike Campgrounds to share information on flood signs with Regional Sign Coordinators;

b. negligently failing to develop a contingency plan or other mitigation steps to deal with a major flooding event at Albert Pike Campground, as acknowledged by the Forest Service, FS, 15;

c. negligently failing to take action to reduce the risk of flooding, as mandated by Executive Order 11988;

d. negligently failing to educate Forest Service employees on Forest Service directives and policies related to flood hazards and negligently failing to implement the directives on critical issues, such as signage and public safety;

  i. As pointed out by the USDA and acknowledged by the Forest Service, "Ouachita Forest Service employees in Region 8 and on the Ouachita National Forest do not have adequate knowledge of Forest Service directives and policies related to flood hazards and mitigation requirements." FS, 15.

e. negligently failing to implement an adequate warning system to notify campers at Albert Pike Campgrounds of dangerous weather conditions and flooding risks;

f. negligently failing to adequately warn the public of the dangers of the impending storm of June 10-11, 2010 to campers at Albert Pike;

15

      i. despite implementing a severe weather policy on the Ouachita Forest and the Caddo-Womble district applicable to Forest Service Employees, the Forest Service failed to implement a similar policy for the safety of the public, USDA, 26;

g. negligently failing to give Albert Pike Camp Hosts and campers prior notice of dangerous weather conditions that were predicted to affect the Albert Pike campground, including the flash-flood watch that was issued at 11:59 am on June 10, 2010 and was set to remain in effect until 7:00 pm on June 11, 2010;

h. negligently failing to advise Volunteer Camp Hosts that Albert Pike campground was located in a flood plain and negligently failing to train Camp Hosts for a flood contingency plan,

      i. In violation of the following Forest Manual directives: FSM 2331.1 *Volunteer Hosts*: Special training and orientation for volunteer hosts is encouraged; FSM 1834.2 *Orientation, Training & Safety*: ...Provide each volunteer orientation on Forest Service history, programs, objectives, environmental quality, and public safety, as appropriate. ... Ensure volunteers receive the necessary training appropriate to enhance their services. Each volunteer shall receive training in safe practices before and during assigned tasks.

i. negligently failing to train or prepare Volunteer Camp Hosts at Albert Pike Campgrounds for emergency situations, including a flash flood, as acknowledged by the Forest Service, FS, 15;

         i. In violation of the following Forest Manual directives: FSM 2331.1 *Volunteer Hosts*: Special training and orientation for volunteer hosts is encouraged; FSM 1834.2 *Orientation, Training & Safety*: …Provide each volunteer orientation on Forest Service history, programs, objectives, environmental quality, and public safety, as appropriate. … Ensure volunteers receive the necessary training appropriate to enhance their services. Each volunteer shall receive training in safe practices before and during assigned tasks.

j. negligently failing to maintain the Albert Pike campgrounds in a reasonably safe condition for public use and failing to protect the health and safety of forest visitors, as required by the Land and Management Plan in effect in June of 2010;

k. negligently failing to monitor and ensure the safety of campers at Albert Pike, as required by Section 21.04 of the Forest Service Health and Safety Code Handbook: "it is the responsibility of the officers and supervisors…to ensure the safety of both employees and the public."

l. negligently failing to evacuate the campers at Albert Pike in a timely fashion;

m. negligently failing to repair a broken radio repeater that resulted in an inability to communicate via radio and the loss of 24-hour dispatch services;

n. negligently failing to correct reported broadcast transmission problems from the Albert Pike Recreation Area with two-way Forest Service radio, including malfunction with High Peak repeater that had been malfunctioning for approximately six (6) months prior to June 11, USDA, 23;

17

o. negligently failing to provide a NOAA National Weather Service ("NWS") weather radio to the Camp Host to ensure that campers would be alerted of dangerous weather conditions in the area;

p. negligently failing to address communication issues with Forest Service employees and law enforcement personnel and failing to implement alternate means of communications to ensure the safety of all employees and campers, as a result of the site's topography, malfunctioning of radio tower repeaters, and known lack of cellular reception;

q. negligently failing to ensure timely emergency response capability for all emergencies, including weather-related emergencies, rather than solely focusing on fire emergencies;

r. negligently failing to implement 24-hour Forest Service dispatch services for emergency situations at Albert Pike to ensure the safety of all employees and campers, USDA.18;

s. negligently failing to safely and reasonably construct the nearby sewer system, including failure to clean and maintain sewage drains or basins;

29. District Ranger Watson and other Forest Service employees were negligent and failed to exercise reasonable care in their actions of proposing, approving, and building the campground in Loop D at Albert Pike in 2001, including but not limited to the following instances:

a. using improper methods to determine the 100 year flood plain elevation;

18

b. negligently failing to build the Loop D campground in an alternate location outside the 100 year flood plain, as required by the Land and Resource Management Plan in effect in June of 2010;

c. negligently failing to recognize the dangers of constructing Loop D of Albert Pike in a flood plain;

d. negligently failing to include the posting of flood hazard signs and increased elevations in the contract for construction of Loop D of Albert Pike due to flooding risks,

   i. as admitted by Forest Service personnel, Flemming: "the contract would have been a perfect avenue to include the issue from the NEPA process about signing the area with warning signs about flooding. Flemming did not know why that (signing issue) didn't get entered into the contract." USDA, 16;

e. fraudulently misleading the engineers and architects hired to build the Loop D campgrounds of Albert Pike;

f. negligently failing to notify engineers and architects responsible for constructing the Loop D of flood hazards in the campgrounds and of the existence of the flood plain;

g. intentionally and negligently disregarding specialists' recommendations to limit camping on Loop D to primitive camping and not installing electricity, water and sewage hook ups;

h. negligently failing to follow the mandates of the National Environmental Protection Act ("NEPA") and Forest Service guidelines by unilaterally

deciding that the campground construction site was above the 100 year flood plain mark based on his own visual assessment,

    i. as determined by the USDA, Ranger Watson's assertion in the Environmental Assessment that "'none of the new campsites proposed for Loop D are in the flood plain' is simply not supported by any credible evidence in the project file;"

i. negligently failing to comply with Forest Service directives on building in a flood plain, the appropriate signage for flood hazard warnings, and other mitigating factors required for construction in a flood plain;

j. negligently failing to consider the well-documented history of flooding of the Albert Pike Campground area;

k. negligently failing to recognize that National Resource Conservation Service maps clearly show that the entire Albert Pike river corridor is located in a flood plain based on the frequency of flooding, USDA, 15;

l. negligently failing to comply with NEPA mandates, by failing to complete an Environmental Impact Statement ("EIS"), as the proposed construction of Loop D of Albert Pike was clearly a major Federal action that significantly affected the quality of the human environment;

m. negligently failing to adequately supervise construction of the Loop D campgrounds at Albert Pike ;

n. negligently failing to maintain the Albert Pike Campgrounds and surrounding flood plain in a safe manner;

30.     As a direct and proximate result of the deviations from the standard of care described hereinabove, the employees and agents of the United States Forest Service caused or were a substantial factor in causing the death of Bruce Roeder.

31.     The Plaintiffs assert claims for all compensatory, including, but not limited to, the physical injuries and deaths described herein, pain and suffering, mental anguish, loss of life, loss of consortium, loss of services and contributions, medical expenses, caretaking and custodial care and property damage, including any such damages reasonably certain to be incurred in the future, in an amount to be determined by the fact-finder, plus the costs of this litigation, and all of the relief to which the Plaintiffs are entitled to by law.

## COUNT III - WRONGFUL DEATH OF DEBORAH ROEDER AS AGAINST THE UNITED STATES OF AMERICA

32.     Plaintiffs reiterate and incorporate fully herein the allegations contained in paragraphs 1 through 19.

33.     At all relevant times, Defendant, the United States, and the employees and agents of the United States Forest Service undertook and therefore owed a duty to Deborah Roeder, in light of all relevant circumstances, to exercise reasonable care, including the duty to monitor and ensure the safety of the visitors of Albert Pike.

34.     Defendant, the United States, breached its duties owed to Deborah Roeder by:

   a. negligently failing to post signs or otherwise warn campers of the dangers of flash floods in the area as a result of conditions that the Forest Service knew or should have known existed at Albert Pike in June 2009, in violation of Forest Service internal directives relating to flood signing, USDA, 10;

i. A well known record of significant flooding events existed prior to the tragedy on June 11, 2010. As recognized by the USDA, flooding incident four days after Albert Pike Loop D officially opened on 07/03/04 in conjunction with subsequent flooding events "should have alerted the Forest Service to the existence of potential flood hazards at Albert Pike Campground D and should have prompted the Forest Service to undertake mitigation measures, such as posting of warning signs." USDA, 17.

ii. FSM 2527.5 *Posting of Past and Probable Flood Heights*, requires the posting of flood hazard signs to enhance public awareness of flood hazards by placing appropriate signs and notices showing the highest flood level and probable 100-year flood height;

iii. Forest Service EM-7100-15, section 13.2 also provides for flood hazard warning and notices, as well as a requirement that the Forest Service will post supplementary information and posters or bulletins as needed for visitor information; however, due to negligence, such signs or warning posters were not posted at Albert Pike prior to the June 11, 2010 flood event;

iv. The Forest Service themselves acknowledged that "[t]he Ouachita National Forest failed to post hazard waning signs and notices at the Albert Pike Campground even though there was an established record of flooding at Albert Pike and Forest Service guidelines called for the posting of such signs," FS, 15;

       v. Among other failures, Region 8 Flood Sign Coordinator was negligent and failed to coordinate with Albert Pike Campgrounds to share information on flood signs with Regional Sign Coordinators;

b. negligently failing to develop a contingency plan or other mitigation steps to deal with a major flooding event at Albert Pike Campground, as acknowledged by the Forest Service, FS, 15;

c. negligently failing to take action to reduce the risk of flooding, as mandated by Executive Order 11988;

d. negligently failing to educate Forest Service employees on Forest Service directives and policies related to flood hazards and negligently failing to implement the directives on critical issues, such as signage and public safety;

       i. As pointed out by the USDA and acknowledged by the Forest Service, "Ouachita Forest Service employees in Region 8 and on the Ouachita National Forest do not have adequate knowledge of Forest Service directives and policies related to flood hazards and mitigation requirements." FS, 15.

e. negligently failing to implement an adequate warning system to notify campers at Albert Pike Campgrounds of dangerous weather conditions and flooding risks;

f. negligently failing to adequately warn the public of the dangers of the impending storm of June 10-11, 2010 to campers at Albert Pike;

       i. despite implementing a severe weather policy on the Ouachita Forest and the Caddo-Womble district applicable to Forest Service

Employees, the Forest Service failed to implement a similar policy for the safety of the public, USDA, 26;

g.  negligently failing to give Albert Pike Camp Hosts and campers prior notice of dangerous weather conditions that were predicted to affect the Albert Pike campground, including the flash-flood watch that was issued at 11:59 am on June 10, 2010 and was set to remain in effect until 7:00 pm on June 11, 2010;

h.  negligently failing to advise Volunteer Camp Hosts that Albert Pike campground was located in a flood plain and negligently failing to train Camp Hosts for a flood contingency plan,

    i.  In violation of the following Forest Manual directives: FSM 2331.1 *Volunteer Hosts*: Special training and orientation for volunteer hosts is encouraged; FSM 1834.2 *Orientation, Training & Safety*: ...Provide each volunteer orientation on Forest Service history, programs, objectives, environmental quality, and public safety, as appropriate. ... Ensure volunteers receive the necessary training appropriate to enhance their services. Each volunteer shall receive training in safe practices before and during assigned tasks.

i.  negligently failing to train or prepare Volunteer Camp Hosts at Albert Pike Campgrounds for emergency situations, including a flash flood, as acknowledged by the Forest Service, FS, 15;

    i.  In violation of the following Forest Manual directives: FSM 2331.1 *Volunteer Hosts*: Special training and orientation for volunteer hosts is encouraged; FSM 1834.2 *Orientation, Training & Safety*: ...Provide

24

each volunteer orientation on Forest Service history, programs, objectives, environmental quality, and public safety, as appropriate. … Ensure volunteers receive the necessary training appropriate to enhance their services. Each volunteer shall receive training in safe practices before and during assigned tasks.

j.  negligently failing to maintain the Albert Pike campgrounds in a reasonably safe condition for public use and failing to protect the health and safety of forest visitors, as required by the Land and Management Plan in effect in June of 2010;

k.  negligently failing to monitor and ensure the safety of campers at Albert Pike, as required by Section 21.04 of the Forest Service Health and Safety Code Handbook: "it is the responsibility of the officers and supervisors…to ensure the safety of both employees and the public."

l.  negligently failing to evacuate the campers at Albert Pike in a timely fashion;

m.  negligently failing to repair a broken radio repeater that resulted in an inability to communicate via radio and the loss of 24-hour dispatch services;

n.  negligently failing to correct reported broadcast transmission problems from the Albert Pike Recreation Area with two-way Forest Service radio, including malfunction with High Peak repeater that had been malfunctioning for approximately six (6) months prior to June 11, USDA, 23;

o.  negligently failing to provide a NOAA National Weather Service ("NWS") weather radio to the Camp Host to ensure that campers would be alerted of dangerous weather conditions in the area;

p.  negligently failing to address communication issues with Forest Service employees and law enforcement personnel and failing to implement alternate means of communications to ensure the safety of all employees and campers, as a result of the site's topography, malfunctioning of radio tower repeaters, and known lack of cellular reception;

q.  negligently failing to ensure timely emergency response capability for all emergencies, including weather-related emergencies, rather than solely focusing on fire emergencies;

r.  negligently failing to implement 24-hour Forest Service dispatch services for emergency situations at Albert Pike to ensure the safety of all employees and campers, USDA.18;

s.  negligently failing to safely and reasonably construct the nearby sewer system, including failure to clean and maintain sewage drains or basins.

35.    District Ranger Watson and other Forest Service employees were negligent and failed to exercise reasonable care in their actions of proposing, approving, and building the campground in Loop D at Albert Pike in 2001, including but not limited to the following instances:

a.  using improper methods to determine the 100 year flood plain elevation;

b.  negligently failing to build the Loop D campground in an alternate location outside the 100 year flood plain, as required by the Land and Resource Management Plan in effect in June of 2010;

c.  negligently failing to recognize the dangers of constructing Loop D of Albert Pike in a flood plain;

    d. negligently failing to include the posting of flood hazard signs and increased elevations in the contract for construction of Loop D of Albert Pike due to flooding risks,

        i. as admitted by Forest Service personnel, Flemming: "the contract would have been a perfect avenue to include the issue from the NEPA process about signing the area with warning signs about flooding. Flemming did not know why that (signing issue) didn't get entered into the contract." USDA, 16;

    e. fraudulently misleading the engineers and architects hired to build the Loop D campgrounds of Albert Pike;

    f. negligently failing to notify engineers and architects responsible for constructing the Loop D of flood hazards in the campgrounds and of the existence of the flood plain;

    g. intentionally and negligently disregarding specialists' recommendations to limit camping on Loop D to primitive camping and not installing electricity, water and sewage hook ups;

    h. negligently failing to follow the mandates of the National Environmental Protection Act ("NEPA") and Forest Service guidelines by unilaterally deciding that the campground construction site was above the 100 year flood plain mark based on his own visual assessment,

        i. as determined by the USDA, Ranger Watson's assertion in the Environmental Assessment that "'none of the new campsites proposed

> for Loop D are in the flood plain' is simply not supported by any credible evidence in the project file;"

i.  negligently failing to comply with Forest Service directives on building in a flood plain, the appropriate signage for flood hazard warnings, and other mitigating factors required for construction in a flood plain;

j.  negligently failing to consider the well-documented history of flooding of the Albert Pike Campground area;

k.  negligently failing to recognize that National Resource Conservation Service maps clearly show that the entire Albert Pike river corridor is located in a flood plain based on the frequency of flooding, USDA, 15;

l.  negligently failing to comply with NEPA mandates, by failing to complete an Environmental Impact Statement ("EIS"), as the proposed construction of Loop D of Albert Pike was clearly a major Federal action that significantly affected the quality of the human environment;

m. negligently failing to adequately supervise construction of the Loop D campgrounds at Albert Pike ;

n.  negligently failing to maintain the Albert Pike Campgrounds and surrounding flood plain in a safe manner.

36.     As a direct and proximate result of the deviations from the standard of care described hereinabove, the employees and agents of the United States Forest Service caused or were a substantial factor in causing the death of Deborah Roeder.

37.     The Plaintiffs assert claims for all compensatory, including, but not limited to, the physical injuries and deaths described herein, pain and suffering, mental anguish, loss of life,

loss of consortium, loss of services and contributions, medical expenses, caretaking and custodial care and property damage, including any such damages reasonably certain to be incurred in the future, in an amount to be determined by the fact-finder, plus the costs of this litigation, and all of the relief to which the Plaintiffs are entitled to by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant, United States, as follows: for general and special damages within the jurisdiction of the Court, in an amount to be proven and apportioned at trial; for damages suffered by the Estates of Esther Kay Roeder, Bruce Wayne Roeder and Deborah Busby Roeder; for damages suffered by the survivors of Esther Kay Roeder, Bruce Wayne Roeder and Deborah Busby Roeder under the Arkansas Wrongful Death Act; for costs of suit incurred herein; for prejudgment interest, according to proof; for such other and further relief as the Court deems just and proper.

Respectfully Submitted:

Theresa Roeder, as the Administratrix of the Estate of Esther Kay Roeder, deceased, and on behalf of the wrongful death beneficiaries of Esther Kay Roeder; Tara Roeder, as the Administratrix of the Estate of Bruce Wayne Roeder, and on behalf of the wrongful death beneficiaries of Bruce Wayne Roeder; and Tara Roeder, Administratrix of the Estate of Deborah Busby Roeder, and on behalf of the wrongful death beneficiaries of Deborah Busby Roeder

s/ *James Freeman*

Melody Piazza, Esquire
Arkansas Bar No: 86108
Wilkes & McHugh, P.A.
One Information Way, Suite 300
Little Rock, Arkansas 72202
Telephone: (501) 371-9903
Facsimile: (501) 371-9905

and

James Freeman, Esquire
Florida Bar No: 0261971
Ashlie Merchant, Esquire[1]
Florida Bar No: 0087265
Wilkes & McHugh, P.A.
One North Dale Mabry Highway, Suite 800
Tampa, Florida 33609
Telephone: (813) 873-0026
Facsimile: (813)286-8820
Attorneys for Plaintiffs

---

[1] Pursuant to Local Rule 83.5, a written application for appearance *pro hac vice* will be filed separately on behalf of Ashlie Merchant, Esquire, as she is not a member of the Arkansas bar.